MSG



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEMICO ANTONIO WASHINGTON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 17-CV-4706 |
| | : | |
| PENNSYLVANIA CRIMINAL | : | |
| JUSTICE SYSTEM, *et al.*, | : | |
|     Defendants. | : | |

**FILED JUN 13 2018** KATE BARKMAN, Clerk By_____ Dep. Clerk

### MEMORANDUM

**GOLDBERG, J.**                                                                                            **JUNE 13, 2018**

On October 19, 2017, Plaintiff Kemico Antonio Washington, an inmate currently incarcerated at SCI Frackville, filed this *pro se* action pursuant to 42 U.S.C. § 1983 on behalf of himself as well as "Prisoners United Together." Washington named as Defendants the Pennsylvania Criminal Justice System, City of Philadelphia, Mayor Kenney, the Philadelphia Sheriff's Department, the Philadelphia Police Department, P.P.S. CFCF County Prison, Corizon, Warden May, Lieutenant McCallister, Officer Cujdic, Officer Conway, Detective Girardo, Hahneman University Hospital, 20th E Pennsylvania Central Detectives Building, and the D.O.C. He also filed a Motion for Leave to Proceed *In Forma Pauperis*.

By Order entered on May 15, 2018, the Court granted Washington leave to proceed *in forma pauperis*, dismissed Prisoners United Together as a party, and dismissed the Complaint. (ECF No. 4.) Specifically, the Court noted:

> Washington cannot maintain his claims against several of the named defendants. To the extent that the Pennsylvania Criminal Justice System is an actual entity, it and the D.O.C. are not people for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989) (noting that a state may not be sued in federal court pursuant to § 1983); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (noting that the Pennsylvania Department of Corrections "shares in the Commonwealth's Eleventh Amendment immunity"). Washington has not



stated a claim against the City of Philadelphia because he has not alleged that the violation of his constitutional rights stemmed from a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) (local governments are not liable under § 1983 "for an injury inflicted solely by [their] employees or agents," but are liable if a municipal custom or policy caused the plaintiff's injury). Nothing in Washington's Complaint plausibly suggests that Mayor Kenney had any personal involvement in the alleged use of excessive force against Washington and the alleged denial of medical care at CFCF. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015). The Philadelphia Sheriff's Department, the Philadelphia Police Department, and the Philadelphia Prison System are "not legal entit[ies] but instead [are] department[s] of the City of Philadelphia and therefore are not "people" for purposes of § 1983. *Burgos v. Phila. Prison System*, 760 F. Supp. 2d 502, 503 n.1 (E.D. Pa. 2011). Washington also cannot assert claims against CFCF, as "it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, Civ. A. No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009). Moreover, Washington's Complaint is devoid of any facts suggesting that Hahnemann University Hospital is a state actor for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (noting that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law"). Finally, the 20th E Pennsylvania Central Detectives Building is not a person that can be sued under § 1983. *See Shipley v. Delaware Cty. Tax Claim Bureau*, No. 13-7398, 2015 WL 2208521, at *6 (E.D. Pa. May 12, 2015). Moreover, while Washington has named Corizon, Warden May, and Lt. McCallister as defendants, he has failed to allege how they were personally involved in the alleged deprivation of his rights. *See Barkes*, 766 F.3d at 320.

(*Id.* at 3-4.) The Court provided leave for Washington to file an amended complaint within thirty (30) days. (*Id.* at 4.)

The Court received Washington's Amended Complaint on June 4, 2018, naming the following individuals and entities as defendants: (1) Philadelphia Police Department; (2) Officer Cujdik; (3) Officer Conway; (4) Detective Federick Girardo; (5) Hahnemann University Hospital; (6) Akosua D. Nuamah CRNP; (7) Curran-Fromhold Correctional Facility ("CFCF"); (8) Medical Dept; (9) RN Kak; (10) MD Jane Doe; (11) Lt. McCallister; (12) Warden May; (13) Phila Sheriff's Dept; (14) Sgt. Jane Doe; (15) Sgt. John Doe; and (16) Deputy Sheriff John Doe.

2

For the reasons set forth below, the Court will dismiss Washington's claims against all Defendants except Officers Cujdik and Conway, and allow him to proceed at this time with his claims against those officers.

## I. FACTS

On April 25, 2016, shortly after 1:00 p.m., Washington was "walking with [his] bike up hill off of Broad & Girard Ave in North Philadelphia." (Am. Compl. at 18.)[1] He was wearing a Seattle Seahawks hat, a Chicago Bears football jersey, blue jeans, and Timberland boots. (*Id.*) As Washington was walking towards his aunt's house, Officer Cujdik stopped him and asked him where he got his hat and jersey. (*Id.*) Washington replied that they were a gift and asked if there was a problem. (*Id.*) Officer Cujdik said "'Nothing really [there] were a string of break ins that were happening a month ago & the person that we are looking for was wearing a football jersey & baseball cap and I feel that my superiors at CDD would like to talk to you.'" (*Id.*) Washington asked if he was under arrest and the officer responded that he was not. (*Id.*) Washington told the officer that he "ha[d] something to do right now" and to "have a nice afternoon." (*Id.*)

Washington began walking away. (*Id.*) Two and a half blocks later, he was "pick[ed] up from behind & [he] was in the air & [his] bike fell to the ground." (*Id.*) His whole body was then "slammed viciously to the [concrete] on [his] right side from head to toe." (*Id.*) Officer Cujdik held Washington's neck down with his knee, and Washington heard a "crack inside of [his] neck." (*Id.*) During this, Officer Conway was punching Washington in the back. (*Id.*) Officer Cujdik then handcuffed Washington, "making [his] arms & wrist[s] go up toward [his]

---

[1] The Court uses the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

3

neck back area as if [he] was a contortionist." (*Id.*) Washington tried to tell Officer Cudjik that he couldn't breathe because of his knee and weight. (*Id.*)

After approximately 15 minutes, Washington asked to see a doctor because he was "seriously hurt." (*Id.* at 19.) He told the officers that he had his medical insurance card in his right front pocket. (*Id.*) Officer Conway retrieved his card, and Officer Cujdik stated that they could take Washington to "fast track." (*Id.*) When they got to "fast track," Washington "was moving all around [and] couldn't keep still from the excruciating pain." (*Id.*) A nurse asked him what happened while "she was putting ointment on [his] wounds & gauze on [his] neck & forehead." (*Id.*) Washington alleges that Officer Cujdik was "chuckling with the nurse" during his treatment. (*Id.*)

Shortly thereafter, Washington was placed into a cell. (*Id.* at 20.) The next day, a turnkey officer told Washington that he would make sure he got to the hospital, but that he needed to be processed first. (*Id.*) Washington had his fingerprints and processing photograph taken, and then was taken to see the magistrate. (*Id.*) He was then taken back to Hahnemann University Hospital, where he was examined for head trauma. (*Id.*) Washington also had X-rays taken of his neck, revealing a chipped bone injury. (*Id.*) He was told that he needed surgery and was placed in a neck brace. (*Id.*) The next morning, Officer John Doe woke him up and told him that he had to leave. (*Id.*)

Subsequently, Washington was charged with burglary. (*Id.* at 21.) At one point, he was waiting at the courthouse for his trial, but he "never got in so [he] was on the go back to CFCF County Jail." (*Id.*) Washington was handcuffed to another inmate and placed inside the elevator with fifteen county inmates. (*Id.*) Once the elevator doors closed, the other inmates began assaulting the inmate to whom Washington was cuffed. (*Id.*) During the assault, Washington's

4

"arm was jerked back & forth [agitating his] injuries that [he had] already been suffering." (*Id.*) Once the elevator opened, Sheriff John Doe pulled the unconscious county inmate out, taking Washington with him. (*Id.*) Washington's back "hit the security gate [and he and] the county inmate landed together on the floor." (*Id.*) He was "holding [his] back in agony the[n] Sgt. Sheriff came running & other sheriffs had come & Sheriff John Doe unhandcuff[ed] him from the unconscious county inmate." (*Id.*) Washington suggests that because of this incident, he suffered injuries to the right side of his head and neck. (*Id.* at 22.)

Washington goes on to allege that for seven months, Hahnemann University Hospital "with the help of Nuamah CRNP, Akosua D hid or destroyed any record of [him] being treated or brought in by police on two separate dates April 26th and April 25th 2016." (*Id.*) He claims that because of this, he hasn't been able to have his injuries treated. (*Id.*) Washington states that he suffers from numbness in his right hand and arm as well as pain in his lower back and neck. (*Id.*) He claims that he was also "falsely arrested & charged maliciously prosecuted assault & batter[e]d kidnap[], malpractice on [deliberate] indifference." (*Id.*) Washington requests "monetary relief/medical relief" for his claims. (*Id.* at 5.)

## II. STANDARD OF REVIEW

Because the Court previously granted Washington leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies to his Amended Complaint. That statute requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.* As Washington is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As discussed below, Washington's Amended Complaint fails to allege a meritorious claim against the named Defendants, with the exception of his claims against Officers Cujdik and Conway.

#### A. Claims Against Officers Cujdik and Conway

As noted above, Washington alleges that Officers Cujdik and Conway used excessive force against him in the course of his arrest on April 25, 2016. (Am. Compl. at 18-19.) In light of his allegations, Washington will be permitted to proceed on his claims against Officers Cujdik and Conway at this time. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

#### B. Claims Against the Philadelphia Police Department and Philadelphia Sheriff's Department

Washington again names the Philadelphia Police Department and the Philadelphia Sheriff's Department as Defendants. As the Court previously informed Washington, these are "not legal entit[ies] but instead [are] department[s] of the City of Philadelphia and therefore are not 'people' for purposes of § 1983." *Burgos v. Phila. Prison System*, 760 F. Supp. 2d 502, 503 n.1 (E.D. Pa. 2011). Thus, his claims against these entities will again be dismissed.

6

### C. Claims Against CFCF and Medical Department

Washington has again named CFCF as a Defendant in this matter. He has also named "Medical Department" as a Defendant. As the Court previously informed Washington, "it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." *Regan v. Upper Darby Twp.*, No. CIV A 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). Likewise, to the extent "Medical Department" refers to the medical department at CFCF, the department is not a person subject to suit under § 1983. *See Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that the prison medical department was not a person for purposes of § 1983). Therefore, Washington's claims against CFCF and Medical Department will be dismissed.

### D. Claims Against Hahnemann University Hospital and CRNP Nuamah

In his Amended Complaint, Washington alleges that Hahnemann University Hospital and CRNP Nuamah "hid or destroyed any record of [him] being treated or brought in by police on two separate dates April 26th & April 25th 2016." (Am. Compl. at 22.) Action under color of state law requires that the one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quotation omitted). Here, nothing in Washington's Amended Complaint suggests that Hahnemann Hospital and CRNP Nuamah are state actors.[2] Thus, Washington's claims against these Defendants will also be dismissed.

---

[2] The Court notes that medical providers could be considered to be state actors if they have contracted with a corrections department or a corporate prison health care provider. *See, e.g.*, *Talbert v. Kaplan*, No. 12-6533, at *4 (E.D. Pa. Aug. 20, 2013). However, these circumstances are not present in Washington's Amended Complaint.

7

### E. Claims Against Detective Girardo, RN Kak, MD Jane Doe, Lt. McCallister, Warden May, and Sgt. Jane Doe

Washington also names Detective Girardo, RN Kak, MD Jane Doe, Lt. McCallister, Warden May, and Sgt. Jane Doe as Defendants in this matter. However, the Amended Complaint is devoid of any allegations suggesting that these individuals were personally responsible for violating Washington's constitutional rights, whether due to their own misconduct or their deliberate indifference to known deficiencies in a policy or procedure that violated his rights. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 320 (3d Cir. 2014), *reversed on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).

To the extent that Washington seeks to hold Detective Girardo, Lt. McCallister, and Warden May vicariously liable for the acts of their employees or subordinates, this is not a permissible basis for liability in a § 1983 action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Moreover, to the extent Washington is raising claims against Lt. McCallister and Warden May based on a failure to investigate his grievances and complaints, he has not stated a constitutional claim. *See Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam) (explaining that "prison inmates do not have a constitutionally protected right to a grievance process"); *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)). Accordingly, Washington's claims against Detective Girardo, RN Kak, MD Jane Doe, Lt. McCallister, Warden May, and Sgt. Jane Doe will also be dismissed.

### F. Claims Against Sgt. John Doe and Deputy Sheriff John Doe

Finally, the only allegations against Sgt. John Doe and Deputy Sheriff John Doe are that they assisted Washington and the inmate to whom he was handcuffed after that inmate was assaulted by other inmates in the elevator. (Am. Compl. at 21.) If Washington is attempting to allege that these individuals failed to protect him from the collateral harm caused by the assault, nothing in the Amended Complaint alleges that they were deliberately indifferent to a substantial risk to Washington's safety. *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Thus, Washington's claims against Sgt. John Doe and Deputy Sheriff John Doe will also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Washington's claims against all Defendants, with the exception of his claims against Officers Cujdik and Conway. As it is possible that Washington could amend his claims against some of the other individuals named as Defendants, he will be given an opportunity to file a second amended complaint in accordance with the Court's Order, which follows. If Washington fails to file a second amended complaint, his Amended Complaint will only be served on Officers Cujdik and Conway.

BY THE COURT:

_____
**MITCHELL S. GOLDBERG, J.**

Mailed
6-14-18
Washington
AP

9